DECISION.
{¶ 1} Defendant-appellant Marquese McDonald appeals his conviction for sexual battery. We affirm.
 {¶ 2} Sometime in June 2003, McDonald met Jahnika Crutchfield outside her apartment complex. McDonald and Crutchfield began to get to know each other by talking on the phone and watching movies together. On June 16, Crutchfield invited McDonald to her apartment to watch DVDs while her mother was away from home. McDonald accepted the invitation.
 {¶ 3} Sometime after his arrival, McDonald had sex with Crutchfield. There was some dispute as to the progression of events leading to the intercourse. The state argued at trial that Crutchfield entered her mother's bedroom to retrieve a DVD. McDonald followed her into the room, bent over Crutchfield, and then pushed her onto the bed. He then got on top of Crutchfield, covered her face with a stuffed animal, and put his penis into her vagina. All this time, Crutchfield told him "no" and "stop." After McDonald was finished, she kicked him out of the apartment and called the police.
 {¶ 4} McDonald claimed that Crutchfield led him into the bedroom. The two then got on the bed and began to watch television. McDonald began to massage Crutchfield and to kiss her. McDonald claimed that the encounter progressed into consensual sex. After a short break, McDonald wanted to have sex a second time, but Crutchfield said, "No." She then asked him to leave and told him that she was going to call the police.
 {¶ 5} The police arrived shortly after Crutchfield called. McDonald immediately approached the police officers; they detained him. At this time, Crutchfield came out of the apartment, yelling, "I told you no, I told you no, I told you no." The officers detained McDonald in a police car for an investigation. McDonald then began talking to the officers, trying to tell his side of the story. One of the officers turned on a video camera, which recorded everything McDonald said. The officers called the Personal Crimes Unit of the Cincinnati Police Department. The Personal Crimes Unit determined that McDonald should be brought in for an interview. McDonald was then taken to the Criminal Investigation Section for the interview.
 {¶ 6} Detective Linda Day interviewed McDonald. Detective Greg Gehring was also present. Detective Day orally interviewed McDonald so that McDonald would feel comfortable talking to her. Detective Gehring took notes of McDonald's statement during the oral interview. After the oral interview, McDonald gave a taped statement.
 {¶ 7} At trial, Detective Day testified about McDonald's statement from Detective Gehring's notes. She authenticated and verified the notes as a true and accurate representation of McDonald's statement. According to the notes, McDonald stated that, during the sexual encounter, Crutchfield kept saying, "No, stop." He then pulled her panties aside and put his penis into her vagina. According to the notes, McDonald thought that "no, stop" did not mean "no, stop." Detective Gehring's notes were entered into evidence over McDonald's objection.
 {¶ 8} After Detective Day interviewed McDonald, he was charged with rape and sexual battery. McDonald was acquitted on the rape charge, but was convicted of sexual battery. McDonald now raises three assignments of error: (1) the trial court erred by allowing the inadmissible hearsay of Detective Gehring's notes into evidence; (2) the evidence at trial was insufficient as a matter of law to sustain the conviction; and (3) the conviction was against the manifest weight of the evidence.
 I. The Admissibility of Detective Gehring's Notes {¶ 9} In his first assignment of error, McDonald argues that the trial court erred by entering Detective Gehring's notes into evidence because they were inadmissible hearsay.
 {¶ 10} Hearsay is a statement, other than one made by the declarant testifying at trial, offered into evidence to prove the truth of the matter asserted.[1] But a statement is not hearsay if the statement is offered against a party and is his own statement in either his individual or representative capacity.[2]
 {¶ 11} By its explicit terms, the rule applies to statements offered against a party where the statements are the party's own.[3] Any party's prior statement is admissible, providing it is offered against the party at trial.[4]
Further, problems of trustworthiness are not as critical in this class of admission since the party declarant will be in court to refute any unfavorable testimony.[5]
 {¶ 12} Here, Detective Day testified about McDonald's statements during McDonald's oral interview. Her testimony was based on her recollection and Detective Gehring's notes. Detective Gehring's notes were admitted into evidence over McDonald's objection. Detective Day testified from Detective Gerhing's notes only as to McDonald's answers during the interview. She verified that the notes were a true and accurate characterization of what McDonald had said.
 {¶ 13} But the notes were inadmissible hearsay. They were Detective Gehring's out-of-court statements offered to prove that McDonald spoke the words that Gehring wrote. Evid.R. 801(D)(2)(a) does not apply because the notes were not McDonald's own statement. Rather, the notes were Detective Gehring's statement as to what McDonald had said during the interview. There was nothing to prevent Detective Day from using the notes to refresh her recollection of the interview.[6] But the notes themselves were not admissible evidence and certainly should not have gone to the jury room as an exhibit.
 {¶ 14} But we conclude that the admission of Detective Gehring's notes was harmless error. For the admission of hearsay to be harmless error, "the reviewing court must find that there is no reasonable possibility that the evidence may have contributed to the defendant's conviction."[7] If a jury expressly relies on a hearsay statement in determining guilt, its admission is prejudicial.[8]
 {¶ 15} McDonald argues that the notes were used to bolster Detective Day's credibility while discrediting his own. Nothing in the record suggests that the jury expressly relied on Detective Gehring's notes to determine McDonald's guilt. Further, the record demonstrates that the notes were consistent with McDonald's own testimony and his recorded statement. We conclude that there is no reasonable possibility that the notes may have contributed to McDonald's conviction.
 {¶ 16} We overrule McDonald's first assignment of error.
 II. Sufficiency and Manifest Weight of the Evidence {¶ 17} In his second assignment of error, McDonald asserts that the evidence presented at trial was insufficient as a matter of law to sustain his conviction and that his conviction was against the manifest weight of the evidence.
 {¶ 18} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented.[9] The relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[10] An appellate court must review the evidence in the light most favorable to the prosecution.[11]
 {¶ 19} A challenge to the weight of the evidence attacks the credibility of the evidence presented.[12] When evaluating the manifest weight of the evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[13]
The discretionary power to reverse should only be invoked in exceptional cases where the evidence weighs heavily against conviction.[14]
 {¶ 20} McDonald was convicted of sexual battery. The sexual-battery statute prohibits a person from engaging in sexual conduct with another when the offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.[15]
 {¶ 21} Crutchfield testified that she repeatedly said no to McDonald's advances. The state offered evidence that McDonald was aware that Crutchfield had said "no" and "stop" numerous times.
 {¶ 22} Crutchfield testified that she tried pushing McDonald off of her. She also testified that McDonald placed a stuffed animal over her face. She could not get away from McDonald.
 {¶ 23} The state offered evidence that Crutchfield called the police immediately after the incident and that she was upset, nervous, and teary when she met with Detective Day.
 {¶ 24} We conclude that a rational factfinder, viewing the evidence in the light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that McDonald had committed sexual battery. Therefore, the evidence presented was legally sufficient to support McDonald's conviction.
 {¶ 25} Crutchfield and McDonald had different accounts of the encounter. The jury was free to accept Crutchfield's version over McDonald's, which it did. Nothing in the record suggests that the jury clearly lost its way. This is not an exceptional case where the evidence weighs heavily against conviction.
 {¶ 26} We overrule McDonald's second assignment of error. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Winkler, P.J., and Hildebrandt, J., concur.
[1] Evid.R. 801(C).
[2] Evid.R. 801(D)(2)(a).
[3] In re Coy, 67 Ohio St.3d 215, 218, 1993-Ohio-202,616 N.E.2d 1105.
[4] State v. Baker (2000), 137 Ohio App.3d 628, 652,739 N.E.2d 819.
[5] Staff Note to Evid.R. 801(D)(2)(a).
[6] Evid.R. 612.
[7] State v. Sorrels (1991), 71 Ohio App.3d 162, 165,593 N.E.2d 313.
[8] Id.
[9] State v. Collins, 1st Dist. No. C-030436, 2004-Ohio-2274, at ¶ 28.
[10] State v. Nields, 93 Ohio St.3d 6, 24, 2001-Ohio-1291,752 N.E.2d 859.
[11] Id.
[12] State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541.
[13] Id.
[14] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[15] R.C. 2907.03(A)(1).